PRICE, Judge.
William J. Jones and the major children of his marriage with Hattie Jones, deceased, brought this possessory action seeking to have the undisturbed possession of a 3.10 acre tract of land in Union Parish restored against an alleged disturbance by defendant, A. W. Pringle.
*593 It is alleged that plaintiffs have had the peaceable and uninterrupted possession of the property from about 1906 until the disturbance by defendant, which occurred between May 15th and June 30, 1966. Defendant is accused of disturbing plaintiffs’ possession by going upon the property, tearing down and removing old fences and constructing new fences thereon. In their petition filed on May 5, 1967, plaintiffs also claim damages amounting to $850.00 because of the alleged trespass by defendant.
In answer to plaintiffs’ petition defendant admitted the construction of new fences on the property but asserted that the fences were being constructed on property belonging to him. Defendant filed a reconventional demand in which he alleges he has been in undisturbed possession of the subject property for more than a year prior to the filing of plaintiffs’ suit, and that the filing of this action by plaintiffs constitutes a disturbance in law of his possession, and seeks, by means of a possessory action, to be maintained in his possession as against the disturbance by plaintiffs. Monetary damages are also claimed in the petition in reconvention in the sum of $15,000.00.
Prior to trial, William J. Jones passed away and the remaining plaintiffs were recognized as the sole necessary parties plaintiff as his only heirs.
After trial on the merits, the district court found for the plaintiffs and rendered judgment maintaining them in possession of the property. The court ordered defendant to assert any adverse claim of ownership within sixty days or be forever precluded from asserting any claim of ownership to the property. The court also awarded nominal damages of $250.00 and rejected the demands in reconvention.
From this adverse judgment the defendant has perfected this suspensive appeal. Defendant contends that the trial judge erred in finding that the plaintiffs bore the burden required of them by law to establish that they were in possession of the disputed property and that the action was brought within one year of the alleged disturbance as required by Article 3658 of the Louisiana Code of Civil Procedure. Defendant further contends the trial court erred in not finding that he had possession of the property for more than a year and refusing to maintain the possessory action asserted in his behalf in the reconventional demand.
Although the testimony of the witnesses is contradictory as to the extent or duration of the possession by the Jones family, we find the evidence to fairly establish the following:
In the year 1906 William J. Jones, who owned and resided on adjacent lands, began possessing this tract by the growing of crops. This continued until Jones became too old to farm, sometime around the year 1955. During the period he used the property he fenced it to prevent cattle from destroying his crops. Apparently a flood in 1945 did considerable damage to the fences and they were gradually allowed to deteriorate and never repaired. After William J. Jones became unable to farm, his son, Ed Jones, cultivated the property for three or four years. Thereafter a daughter and her husband grazed cattle on the land. At the time A. W. Pringle began to fence the tract, the land was lying fallow and only the vestiges of the old fences remained.
The district judge in his reasons for judgment found that the plaintiffs had sufficiently borne the burden required of them by the provisions of Article 3658 of the Louisiana Code of Civil Procedure, which reads as follows:
“To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without in *594 terruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.”
The most serious question raised by appellant is whether or not the evidence warranted the trial court’s conclusion that the requirements of paragraphs (1) and (4) of this Article had been met, entitling plaintiffs to a possessory action.
There is no doubt from the evidence that William J. Jones began possessing the property around 1906 and continued his possession by farming until 1955. Appellant contends that from this time on there is not sufficient evidence to prove that the Jones children continued this possession to within one year of the disturbance by defendant. It is appellant’s position that the most the evidence shows is the grazing of cattle belonging to a daughter and her husband on the land and that this alone is not sufficient to continue possession.
The first paragraph of Article 3660 of the Louisiana Code of Civil Procedure provides :
“A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.”
In the case of Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952), decided prior to the adoption of the present Code of Civil Procedure, the Supreme Court interpreted the requirements of possession as set forth in Article 49 of the Louisiana Code of Practice, which then provided for the possessory action. That article provided that a party must show real and actual possession at the instant the disturbance occurred and mere civil or legal possession were not sufficient. The court in the Richey case cited and accepted the civil concept of possession and possessory action as discussed by Saunders in his Lectures on the Civil Code, as follows :
“When the possession has once been acquired it may be maintained without the actual physical presence of the possessor on the lands; it is maintained in the extent to which it was acquired, and to the extent to which the acts of ownership were exercised by the possessor. The Code tells you that this possession is attributed to the possessor who has once been on the place and controlled it, as long as there are any vestiges on the land indicating the ownership by the possessor (3501); for example, ruins of his house, though the ruins may be such as would scarcely indicate what the house was.
>{« % >ji iji
“Of course, this attributed possession ceases in the face of exclusive opposing possession. If A has been in physical possession of a tract of land and then leaves the land, but leaves evidence of intention to keep it as his own, he will be deemed to be still in possession until somebody else takes actual possession but his attributed possession ceases in face of actual possession. In the thirty years’ prescription which is not based on title, the possession is called pedis possessio, foot possession; as there is no title to indicate the limits in which the possessor considers his rights as owner to extend, his position is limited by the area over which he exercises actual possession. The cultivated fields would be the most obvious limits of possession but wood land or swamp land is susceptible of actual possession, only there is a great deal of difficulty in determining how far the owner intended his possession to extend, whether he intended it to extend as far *595 back as he cut wood and carried it away for timber or for houses on the plantation, or as far as he extended his ditches and kept them in repairs. * * Page 438.
The editorial comments following Article 3660 of the Louisiana Code of Civil Procedure (replacing Article 49 of the Code of Practice) point out that this article does not retain the language “actual possession” and “real and actual possession” of Article 49 of the Code of Practice, as these terms were not in accord with the concepts of the Civil Code as defined by the jurisprudence.
In the Richey case the court recognized the necessity of possessing by enclosures where claim is made by adverse possession and without title. The court defined the word “enclosures” as follows:
“We recognize also that under the jurisprudence a person claiming by possession alone and without title is required to show an adverse possession by enclosures, and that his claim will not extend beyond such enclosures. But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think that a strict interpretation should be given to the word ‘enclosures’.
“We are supported in this view by the interpretation given by this court in the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, to the word ‘boundaries’ as used in Article 3437 of the Civil Code dealing with possession. That article provides: ‘It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.1 In that case this court said that ‘ * * * The word “boundaries,” in that article, means the limits or marks of inclosttre if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * * ’
“Further, Article 826 provides:
‘By boundary is understood, in general, every separation, natural or artificial, which marks the confines or line of division of two contiguous estates. Trees or hedges may be planted, ditches may be dug, walls or inclosures may be erected, to serve as boundaries.
‘But we most usually understand by boundaries, stones or pieces of wood inserted in the earth on the confines of two estates.’
“What the court means by ‘enclosures’, as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix- with certainty the boundaries or limits thereof. To say that the term means ‘enclosed only by a fence or wall’ would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases.” [59 So.2d 434, 440]
The district judge cited the Richey case in finding that the evidence proved that the actual and corporeal possession begun by William J. Jones about 1906 was continued on by his children after his retirement in 1955. We can find no manifest error in his findings based on the guidelines set forth in the Richey case. There is evidence in the record supporting the finding of actual use by a son, Ed Jones, by farming until about 1958 or 1959. The alleged disturbance occurred in 1966. Therefore, no abandonment of corporeal possession for more than ten years had taken place. No other persons had exerted any possession over the property or asserted any adverse *596 claim until the defendant began building fences in the year 1966. The district judge found as a fact that there were vestiges of the old fences built by Jones still remaining at the time of the disturbance. Although the testimony as to whether there was any apparent existence of the old fence now remaining at the time defendant proceeded to fence the property was contradictory, we believe there was sufficient evidence to justify the conclusion of the trial judge. The surveyor who made a survey on behalf of plaintiffs testified that he found post holes and a rim of dirt running along the line claimed by plaintiffs. He was of the opinion that these indicated the previous existence of a fence row. The defendant admitted to burning a number of old fence posts in cleaning up the property, although he denied removing any standing fence.
The Richey case held that one who has actual and corporeal possession of a tract that is marked by visible boundaries may continue to have civil possession even after actual use has been terminated, until such time as he is evicted by some third person.
The trial judge found from the evidence that at the time of the disturbance by defendant, there were still sufficient vestiges of a fence to indicate the boundaries of the tract in dispute. This is a factual finding which should not be set aside unless not supported by the evidence. We find that there is sufficient evidence to justify this finding.
Defendant contends that more than a year elapsed from the time he disturbed plaintiffs’ possession until suit was brought, thus precluding plaintiffs from maintaining the possessory action by the provisions of paragraph (4) of Article 3658. We can find nothing erroneous in the trial judge’s finding that the defendant’s disturbance began between May 15th and June 30, 1966. Although defendant testified he began putting up posts in the early spring of 1966, he admitted in his testimony that it was later in 1967 before he completed putting wire on the posts and began to use the property by planting pecan trees. One of the plaintiffs, Mrs. Ford, who contended she was grazing cattle on the land, testified that in June of 1966 she discovered someone had torn down the old fence and had placed two new posts on the property. She further testified that she contacted defendant and inquired if he was the person committing these acts.
The trial judge saw fit to give more weight to the testimony of Mrs. Ford and other corroborating evidence than to the somewhat contradictory testimony of the defendant and his witnesses. We can find no manifest error in his weighing of this testimony.
For the foregoing reasons it is ordered that the judgment appealed from be affirmed at appellant’s cost.